IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JAY SILVERSTEIN, | ) | CIV. NO. 15-00097 SOM/KJM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION FOR |
| | ) | RECONSIDERATION |
| vs. | ) | |
| | ) | |
| ASHTON B. CARTER, in his capacity as the Secretary of Defense, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION FOR RECONSIDERATION**

**I.      INTRODUCTION.**

On August 11, 2016, this court issued an order dismissing the portion of Plaintiff Jay Silverstein's retaliation claim based on facts alleged in paragraphs 14, 17, 22, 24, 25, and 30 of the First Amended Complaint, the sole exception being the portion of the retaliation claim relating to a trip to Laos. The court then granted summary judgment in favor of Defendant on the portion of the retaliation claim relating to the Laos trip and all other remaining portions of the retaliation claim except the portion based on Silverstein's not having been selected for a Supervisory Historian position.  This court also granted summary judgment to Defendant on the entire hostile work environment claim.  See ECF No. 68.

On August 22, 2016, Silverstein moved for reconsideration of the order under Rule 59(e) of the Federal

Rules of Civil Procedure. See ECF No. 71. That motion is denied.

## II.     RECONSIDERATION STANDARD.

"The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." 11 Charles Alan Wright, Arthur Miller, and Mary Kay Kane, Federal Practice & Procedure § 2810.1 (3d ed. West 2015); see also Exxon Shipping Co. v. Baker, 554 U.S. 471, 486 n.5 (2008).

> A district court may properly reconsider its decision if it "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." School Dist. No. 1J v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Clear error occurs when "the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).

Smith v. Clark Cty. Sch. Dist., 727 F.3d 950, 955 (9th Cir. 2013). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." McDowell v. Calderon, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999) (en banc). The decision on whether to grant or deny a Rule 59(e) motion is committed to the sound discretion of this court. Id. n.1 ("the district court enjoys considerable discretion in granting or denying the motion"); see also Herbst v. Cook, 260 F.3d 1039,

1044 (9th Cir. 2001) ("denial of a motion for reconsideration is reviewed only for an abuse of discretion").

Silverstein seeks reconsideration of the court's order granting in part and denying in part summary judgment in favor of the United States. Because the court denied summary judgment with respect to part of one claim, final judgment has not been entered, making Rule 59(e) inapplicable. The court therefore construes the reconsideration motion as brought under Local Rule 60.1, which adopts the same standard for interlocutory orders such as the one underlying the present motion. See Preaseau v. Prudential Ins. Co. of Am., 591 F.2d 74, 79–80 (9th Cir. 1979) ("an order denying a motion for summary judgment is generally interlocutory and subject to reconsideration by the court at any time" (quotation marks and citation omitted)); Martin v. ABM Parking Servs., Inc., 2013 WL 6624124, at *1 (D. Haw. Dec. 16, 2013) (construing motion seeking reconsideration of denial of summary judgment motion as brought under Local Rule 60.1); see also Wynn v. Reconstruction Fin. Corp., 212 F.2d 953, 956 (9th Cir. 1954) (noting that partial summary judgment order is non-appealable prior to entry of final judgment and should be considered "interlocutory summary adjudication").

**III.   ANALYSIS.**

    **A.   The Court Does Not Reconsider Its Ruling on the Retaliation Claim.**

Silverstein first argues that the court committed clear error in failing to consider the facts alleged in paragraphs 14, 17, 22, 24, 25, and 30 of the First Amended Complaint as evidence of retaliation, even though any Title VII retaliation claim based on those facts was untimely. But Silverstein agreed that he had not timely exhausted any retaliation claim based on those allegations.[1] Moreover, in granting summary judgment in favor of the Government with respect to the Title VII retaliation claim, the court actually discussed those events, noting that they were discrete acts, often unrelated to Title VII, that occurred so long before any alleged adverse employment action that, on the present record, they did not raise a genuine issue of fact as to whether Silverstein had suffered actionable Title VII retaliation.

    Silverstein could not simply allege retaliation or rely on an inference of retaliation. As the court said on page 16 of its order, "With respect to his actions supporting women co-workers, Silverstein does not establish that any of the acts he complains of were close enough in time to the things that he said

---

[1] The court understood that Silverstein's concession went only to his retaliation claim, not to his hostile work environment claim.

or did that causation can be inferred." See ECF No. 68, PageID # 1092. Looking specifically at Silverstein's support of Dr. Joan E. Baker and Dr. Kristina Giannotta, the court reiterated that "any retaliation he says he suffered occurred so long after that support that . . . causation cannot be inferred." Id., PageID #s 1092-93. Silverstein needed to present some actual evidence connecting that support to adverse employment actions. He did not do that.

      Like his opposition to the original motion, Silverstein's reconsideration motion fails to articulate what retaliation he suffered because he exercised a Title VII right. The problem in both the original motion and the reconsideration motion can be divided into categories. In one category are matters that Silverstein fails to show relate to Title VII at all. In another category are matters for which Silverstein fails to identify what, if any, retaliation occurred. In yet another category are matters for which Silverstein provides only allegations or conclusions, not admissible evidence. Many of the matters fall into more than one category, as this court notes in the paragraphs that follow. This court is not saying that many of the things Silverstein points to as having happened to people working for the Department of Defense, POW/MIA Accounting Agency (fka the Joint POW/MIA Accounting Command) were justified. However, even if unjustified, many matters simply do not create a

triable issue with respect to Silverstein's Title VII retaliation claim.

For example, with respect to Silverstein's support of Dr. Elliot Moore in 2005, Silverstein submits no evidence demonstrating that the treatment of Moore or the treatment of Silverstein for having opposed the treatment of Moore related to anyone's race, color, religion, sex, or national origin, the classes protected by Title VII. 42 U.S.C. § 2000e-2(a)(1). Silverstein notes that Moore was deaf and large, and this court has no difficulty understanding that Silverstein objected to Moore's being allegedly discriminated against because of his disability or size, but any retaliation flowing from such an objection cannot fall under Title VII because Title VII does not protect against retaliation for supporting a disabled or large co-worker.

The court recognizes that, as Silverstein noted in his reconsideration motion, he filed a grievance when he was reprimanded in August 2010 for having allegedly used equipment without authorization. The grievance referred to the Central Identification Laboratory's treatment of Dr. Moore. See ECF No. 51-12, PageID # 820. But referring to discrimination in a grievance does not automatically demonstrate that either Moore or Silverstein suffered a violation of Title VII rights. The grievance discussed how management was dealing "with scientists

6

out of favor." Id.  The grievance stated that the letter of reprimand

> appears to be part of a concerted attempt to mischaracterize me as defiant and of attempting to subvert standing rules.  This punishment appears to be a part of pattern of harassment aimed at silencing me as an opposing scientific opinion and at undermining and penalizing me specifically for having had the audacity to leave the Lab for a management position in the J2.

Id.  While Silverstein may have a basis for complaining about mistreatment, the record does not show that he was retaliated against for having exercised Title VII rights, as opposed to having exercised his rights with respect to matters unrelated to Title VII, such as disability discrimination.

Silverstein fares no better with respect to his retaliation claim relating to his support of Dr. Baker in 2009. This court noted in its earlier order that it was unclear from the record what form any alleged retaliation took and that Silverstein's support of Baker in 2009 was not sufficiently close in time to any alleged retaliation to support an inference that, whatever the retaliation was, it flowed from Silverstein's exercise of Title VII rights (i.e., from his support in 2009 of Baker).  See id., PageID # 1096.  Because Silverstein did not clearly articulate what retaliation he had suffered, the court examined the matters that were relatively close in time to his support of Baker: (1) having his team pulled from a March 2010

deployment to Tarawa Atoll; (2) an August 2010 reprimand by his supervisor, Robert Richeson; and (3) a 2011 counseling by Richeson concerning a proposed University of Hawaii project.  The court ruled that no admissible evidence connected these events to Silverstein's support of Baker's Title VII case.  At most, Silverstein only contended that Dr. Holland, who was criticized in Baker's sex discrimination complaint, forced Silverstein's supervisor, Robert Richeson, to retaliate against Silverstein.  Id., PageID # 1097.

Silverstein's reconsideration motion characterizes this court's failure to recognize what Silverstein says are clear connections between his support of Dr. Baker and the negative treatment Silverstein received as a "finding that Silverstein lacks the credibility to allege that retaliatory animus to which he was subjected" was caused by "his association with Dr. Baker."  ECF No. 71-1, PageID # 1177.  This court made no credibility finding at all, much less a finding as to what Silverstein has "the credibility to allege."  Silverstein is free to make any allegation, but he does not effectively respond to a summary judgment if his response is nothing more than an allegation.

Silverstein similarly relies on mere assertion when he refers to the rescission of Richeson's reprimand.  Richeson reportedly congratulated Silverstein on the rescission, but the

8

only thing that connects that incident to Title VII is Silverstein's assertion of a connection.

This court notes yet another reliance on mere assertion when Silverstein says, "One need only read the Declaration of Joan Baker to glean the fact that Holland retaliated against her while she was in Honolulu, working, and to this day, retaliates against her in Washington, D.C." Id.  Silverstein appears to believe that just intoning the word "retaliation" gives rise to a triable issue.  Even assuming Baker is being retaliated against, that does not mean Silverstein himself has a triable claim that is not just for retaliation against him but is for retaliation against him within Title VII's scope.

In yet another example of Silverstein's failure to connect what happened to him with Title VII, he points to the roles Dr. Gregory Fox and Major Guthrie played in cancelling his team's March 2010 deployment to Tarawa Atoll. See ECF No. 71-1, PageID # 1176; ECF No. 51-1, PageID # 628.  Silverstein says that Fox also "defamed" him. See id.  But Silverstein does not explain how Dr. Fox or Major Guthrie retaliated against him for his exercise of Title VII rights.  Just because Fox and/or Guthrie may have had animus towards Silverstein does not render Silverstein's claim actionable under Title VII.  Silverstein must tie the alleged animus to his exercise of Title VII rights, and the tie must consist of more than a mere assertion of a tie.

9

Thus, it is not enough that, in 2014, Silverstein filed an EEO complaint identifying Dr. Fox as having engaged in "reprisal" for Silverstein's October 2012 informal contact with an EEO counselor. See Report of Investigation, ECF No. 36-13. First, the court cannot discern the content of that informal contact. Second, it appears that what Silverstein refers to as an EEO complaint was permitted to cover matters beyond what Title VII addresses. And the EEO counselor was apparently not confined to examining Title VII issues. Thus a "reprisal" allegation in an EEO complaint might not be relevant to a Title VII claim. Third, the Tarawa Atoll trip was cancelled in 2010, long before Silverstein contacted an EEO counselor. Similarly, Silverstein's May 2011 letter to Robert Richeson complaining that Major Guthrie appeared to have had issues with women in positions of authority, see ECF No. 51-21, could not have led to retaliation with respect to the March 2010 cancellation of the Tarawa Atoll deployment.

Silverstein's motion for reconsideration focuses for the first time on an e-mail dated August 14, 2010, from Dr. William Belcher to Silverstein. This e-mail was part of the evidence submitted by Silverstein in opposing the summary judgment motion, ECF No. 51-11, but it was not mentioned in his Concise Statement of Facts. Pursuant to Local Rule 56.1(f), this court has no duty to search and consider any part of the record

not so identified.  Even if the court does consider the e-mail, it does not demonstrate that Silverstein was retaliated against for having exercised Title VII rights (or, for that matter, that he suffered an actionable hostile work environment in violation of Title VII).  The subject of the email is "Message from Greg." ECF No. 51-11, PageID # 812.  The body of the e-mail seeks to respond to anyone questioning Dr. Gregory Fox's abilities and decisions as an archaeologist.  The "message" from "Greg" is to "tell anyone who doesn't think I know what I'm doing that they can shove it up their ass."  Id.  Assuming Silverstein questioned Fox's work, Fox may have disliked Silverstein as a result and arguably wanted to retaliate against him.  But questioning Fox's abilities is not the same as engaging in activity protected by Title VII.  Title VII does not offer protection from retaliation whenever one criticizes another person's professional abilities, even if the criticism is justified.  Without more, the e-mail does not suggest any connection between retaliation against Silverstein and his exercise of Title VII rights.

In his motion for reconsideration, Silverstein also notes that, in her recent deposition, Baker testified that she had heard a "colleague" say "that plaintiff had 'baggage' from his complaints of retaliation when the colleague discussed the plaintiff's application for a[n] archaeologist's position."  ECF No. 71-1, PageID # 1174.  This new evidence does not justify

11

reconsideration of the court's order.  Not only does the statement made by an unnamed "colleague" appear to be inadmissible hearsay, Silverstein is not asserting a retaliation claim based on his failure to get the archaeologist position in 2015.  See id., PageID # 1142-43.

This court can identify many more instances in which Silverstein, while arguably showing that he was treated badly, does not provide evidence tying that treatment to Title VII.  His motion for reconsideration relies on his May 17, 2011, ethics complaint against Fox and Dr. John Byrd in alleging retaliation.  See ECF No. 71-1, PageID # 1178.  That ethics complaint did not relate to anything falling under Title VII.  Instead, the ethics complaint concerned alleged "malfeasance of duty, waste of funds, and ethical issues."  See Silverstein Decl. ¶ 28(e), ECF No. 51-1, PageID # 635.  Thus, while Silverstein's trip to Washington and his complaint to various congressional staff members about the alleged ethics violations may well be activities protected by some law, they are not protected by Title VII and do nothing to support a Title VII retaliation claim.  See ECF No. 71-1, PageID # 1179.

Nor is the resubmission of the ethics complaint in 2012 at all supportive of a Title VII claim.  This court by no means questions that the resubmission occurred.  The court makes no determination as to whether the 2012 ethics complaint was or was

not warranted.  The court confines itself to examining whether the ethics complaint or the fallout from that complaint could be said to relate to Title VII.  Silverstein simply does not provide the court with evidence that allows the court to treat the matter as relating to Title VII.  While Silverstein may have been retaliated against for having submitted the 2012 ethics complaint, Title VII is not an umbrella protection against every form of retaliation.  Accordingly, even if Byrd called the complaint "malicious" and recommended that action be taken against Silverstein because he had filed the ethics complaint, see ECF No. 71-1, PageID # 1179, Byrd's alleged retaliation does not, absent more, show that Silverstein was punished for having exercised Title VII rights.

This court is equally unpersuaded by Silverstein's argument that the court should have considered his support of Dr. Giannotta in 2011 with respect to the retaliation claim.  Silverstein conceded that he is not seeking damages based on having protested the alleged harassment of Giannotta.  See id., PageID # 1100.  Moreover, Silverstein's reconsideration motion does not identify what alleged retaliation he suffered for having supported Giannotta.  Silverstein instead argues that Giannotta suffered retaliation at the hands of Major Guthrie.  See id., PageID # 1175.  Retaliation against Giannotta is not, absent more, evidence of retaliation against Silverstein.  Silverstein

13

does not identify who retaliated against him for his support of Giannotta or what form that retaliation took.  As the court ruled earlier with respect to any alleged retaliation for Silverstein's support of Giannotta, "any retaliation he says he suffered occurred so long after that support that that causation cannot be inferred."  Id., PageID # 1092-93.  Because there is no inference, Silverstein must submit at least some admissible evidence that his support of Giannotta led to retaliation against him.  He submits none.

In opposing the summary judgment motion, Silverstein referred to his support of David Rankin.  Silverstein alleged that, as a result, he was retaliated against in violation of Title VII.  Like his opposition, his reconsideration motion provides no evidence tying support for Rankin to Title VII.  At most, the reconsideration motion mentions that, in 2008, Dr. Holland made "an unreasonable personnel request" to Silverstein that Rankin be "retrained as a new employee because he did not meet the deadline for retesting."  ECF No. 71-1, PageID # 1176.  Silverstein does not tie Holland's treatment of Rankin to "race, color, religion, sex, or national origin," the categories protected by Title VII, 42 U.S.C. § 2000e-2(a).  Nor does Silverstein explain what the alleged retaliation relating to his support of Rankin was.

In short, Silverstein fails to raise a genuine issue of fact as to whether he suffered retaliation for having exercised a Title VII right.  Although his motion for reconsideration contends that the court failed to consider evidence, the court indeed did consider the evidence submitted in opposition to the summary judgment motion, determining it did not raise any genuine issue of fact with respect to his Title VII retaliation claim.

The reconsideration motion boils down to a reargument of matters raised in Silverstein's earlier opposition.  But mere disagreement with an order does not justify reconsideration.  White v. Sabatino, 424 F. Supp. 2d 1271, 1274 (D. Haw. 2006) ("Mere disagreement with a previous order is an insufficient basis for reconsideration.").

A prime example of a matter reargued in the reconsideration motion is the issue of the reassignment of two members of Silverstein's section.  This court extensively discussed that event in its order, determining that Silverstein had failed to show that the transfer was caused by an exercise of Title VII rights and noting that, even if it could be said to have related to an exercise of Title VII rights, the employer had demonstrated legitimate, nondiscriminatory reasons for the transfers, while Silverstein had failed to raise a genuine issue of fact as to whether those reasons were pretextual.  See ECF No.

68, PageID #s 1108-10.  Silverstein's reconsideration motion does not even attempt to show error in those conclusions.

Similarly reargued is the matter of the September 2012 denial of leave to accept an award.  This court noted in its order that Silverstein made no showing that the denial of leave related to Title VII.  The court also ruled that the employer articulated legitimate, nondiscriminatory reasons for denying leave and that Silverstein failed to raise a genuine issue of fact with respect to pretext.  See id., PageID # 1105-07.  In his reconsideration motion, Silverstein fails to demonstrate any error in those rulings.  At most, Silverstein argues that the absence of an actual government shutdown in 2012 is evidence of pretext.  The problem with the argument is that the agency could not have known at the time it denied leave that no shutdown would occur.  As discussed in the order, an imminent shutdown was threatened at the time of the denial.  Silverstein disagrees with the court's reasoning, noting that other employees were "dismayed" by the denial.  That is neither evidence of pretext nor grounds for reconsideration.

Silverstein also reargues the retention initiative issue without providing a basis for reconsideration of this court's retaliation ruling.

This court leaves unchanged its retaliation decision.

### B. Silverstein Fails To Demonstrate That Reconsideration is Appropriate With Respect to His Title VII Hostile Work Environment Claim.

Citing Ray v. Henderson, 217 F.3d 1234 (9th Cir. 2000), Silverstein argues that he suffered from a hostile work environment because he was subjected to repeated derogatory or humiliating statements. Once again, Silverstein fails to show that reconsideration is warranted. See ECF No. 68, PageID #s 1129-44.

Silverstein's reconsideration motion relies on an e-mail dated March 12, 2014, from Dr. Holland. This e-mail responded to a directive from Kelly McKeague transferring Reimi Patterson-Davidson from the Central Identification Laboratory to Research and Analysis. See ECF No. 51-23, PageID # 850. Holland opposed the transfer, noting that Patterson-Davidson should never have been hired, as her background was in Hawaiian Studies, leaving her "poorly suited to understand military battlefield history." Id., PageID # 849. Holland also said that Patterson-Davidson had "performed at a substandard level . . . [and] produced no usable historical leads." Id. He said Patterson-Davidson continued to fall asleep at work even after having been counseled for sleeping on the job. Id. According to Holland, Patterson-Davidson was given 6 months to improve her performance, but no improvement had been seen. Id. Holland complained:

> Ms. Patterson-Davidson's transfer to R&A continues a pattern begun several years ago

>           of transferring CIL employees (and now ORISE
>           fellows) that are either being disciplined or
>           terminated for inefficiency or workplace
>           malfeasance to R&A.  This has had the effect
>           of creating a pool of personnel, disgruntled
>           with the CIL, residing within R&A.  In my
>           opinion, much of the friction between R&A and
>           the CIL in recent years stems from this
>           practice and these individuals.

Id., PageID # 850.

Silverstein cites this quoted language as supporting his hostile work environment claim.  While the language indicates that there was "friction" between the Central Identification Laboratory and Research and Analysis, the language does not, on its own, tie the "friction" to anyone's race, color, religion, sex, or national origin, the classes protected by Title VII. 42 U.S.C. § 2000e-2(a)(1).  The language gives this court no basis for viewing Holland's assessment of Patterson-Davidson as relating to her race or sex.  To the extent Silverstein seeks to suggest such a relation, it is incumbent on him to show how, if the matter went to trial, he would show that relation by a preponderance of the evidence.

In its earlier order, the court noted that a Report of Investigation referred to a belief by the employees in Silverstein's section that the treatment of Patterson-Davidson "was possibly racially motivated."  ECF No. 68, PageID # 1114.  Not only is this vague reference to a belief as to possible racial animus insufficient to create a triable issue, the belief

about the basis for Patterson-Davidson's treatment in no way substantiates a claim by Silverstein that he suffered a hostile work environment.  Even if Patterson-Davidson faced race discrimination, Silverstein must do more than point to what Patterson-Davidson may have suffered.  Silverstein fails to identify what hostile environment he himself suffered that relates to anything having to do with Patterson-Davidson.

This court is not here weighing evidence to determine whether it constitutes a preponderance.  The court is instead looking for some degree of admissible evidence, something more than Silverstein's assertion.  Silverstein presents nothing more.

Given Silverstein's failure to connect any hostility to Title VII, this court does not reconsider its determination that Silverstein has failed to raise a genuine issue of fact as to whether his workplace was permeated with discriminatory intimidation relating to race, color, religion, sex, or national origin that was sufficiently severe or pervasive to alter the terms and conditions of his employment and create an abusive working environment.  See ECF No. 68, PageID # 1143.

**IV.    CONCLUSION.**

The court denies Silverstein's motion for reconsideration.

      IT IS SO ORDERED.

      Dated:  Honolulu, Hawaii, September 1, 2016.



        /s/ Susan Oki Mollway
      Susan Oki Mollway
      United States District Judge

Silverstein v. Carter, Civ. No. 15-00097 SOM/KJM; ORDER DENYING MOTION FOR RECONSIDERATION